UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| **SAMMY EDWARD SIMPSON, II,** } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Case No.: **7:12-CV-02467-RDP** |
| } | |
| **STATE OF ALABAMA DEPARTMENT** } | |
| **OF HUMAN RESOURCES, et al.,** } | |
| } | |
| Defendants. } | |

## MEMORANDUM OPINION

This case is before the court on Defendants' Motion for Summary Judgment (Doc. #34), filed on August 22, 2013. The Motion (Doc. #34) has been fully briefed (Docs. #37 & #38) and is properly under submission. For the reasons stated below, the Motion (Doc. #34) is due to be granted.

**I.     Procedural History**

Plaintiff Sammy Edward Simpson, II ("Plaintiff") initiated this lawsuit on July 16, 2012 by filing a Complaint (Doc. #1) against Defendants Alabama Department of Human Resources ("Alabama DHR"), St. Clair County Department of Human Resources ("St. Clair County DHR"), Jefferson County Department of Human Resources ("Jefferson County DHR"), Marshall County Department of Human Resources ("Marshall County DHR"), Nancy Buckner, William Butch King, Vera Warrant, and Terri Coley. Defendants filed both an Answer (Doc. #7) and a Motion to Dismiss (Doc. #8) on September 18, 2012. On November 16, 2012, the court published a Memorandum Opinion (Doc. #17) and an Order (Doc. #18), dismissing all of the individual defendants and leaving Alabama DHR, St. Clair County DHR, Jefferson County

DHR, and Marshall County DHR as the remaining defendants. Defendants then filed a Motion for Summary Judgment (Doc. #34) on August 22, 2013, after which Plaintiff filed a Response (Doc. #37) and Defendants filed a Reply (Doc. #38). The Motion (Doc. #34) is now properly under submission.

## II.     Facts[1]

Plaintiff currently resides in Fort Payne, Alabama, but, until recently, lived on his family's 200-acre farm in Collinsville, Alabama. (Doc. #34, Ex. 5, Part 1 at 1, 27, 89). Plaintiff is a college graduate and licensed social worker, but is currently unemployed and has been on Social Security disability since 2006. (*Id*. at 26). Plaintiff has a long history of mental illness, having been diagnosed, among other things, with manic bipolar disorder. (*Id.* at 48).

Plaintiff began his college education at Snead State Community College, from which he received an Associate Degree in 2002. (*Id.* at 31-32; Doc. #34, Ex. 5, Part 2 at 18). Plaintiff then matriculated to Jacksonville State University, where he majored in social work. (Doc. #34, Ex. 5, Part 1 at 32-33). While at Jacksonville State, Plaintiff met the field requirement for his social work degree by completing a three-month internship with Family Life Center, a private social work practice. (Doc. #34, Ex. 5, Part 1 at 16-17; Ex. #34, Ex. 5, Part 2 at 23). In July 2004, Plaintiff graduated from Jacksonville State University with a Bachelor of Social Work. (Doc. #34, Ex. 5, Part 2 at 79). Thereafter, Plaintiff was employed as a social worker by Marshall County DHR from August 2004 to December 2004. (Doc. #34, Ex. 5, Part 1 at 11-12). Plaintiff resigned from the position after it came to light that he was dating a Marshall County DHR

---

[1] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts that could be established through live testimony at trial. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

client, whom he had apparently first met during his aforementioned internship at Family Life Center. (*Id.* at 17-19). After leaving Marshall County DHR, Plaintiff worked for approximately six months (January 2005 through June 2005) as a social worker at Northport Health Services Healthcare and Rehab ("NHS"), a nursing home in Crossville, Alabama. (*Id*. at 19-20; Doc. #34, Ex. 5, Part 2 at 13). Plaintiff was fired from NHS for "moving a resident," and has not been employed as a social worker since that time. (Doc. #34, Ex. 5, Part 1 at 23-24). In fact, from 2006 to 2012, Plaintiff did not attend any interviews for positions in social work. (Doc. #34, Ex. 5, Part 1 at 63). However, after being fired from NHS, Plaintiff passed the Alabama social work licensing examination, and he has maintained an active social work license since then. (*Id*. at 35-36; Doc. #34, Ex. 5, Part 2 at 16-17).

Since his last job as a social worker in 2005, Plaintiff has pursued a number of lawsuits against various entities in the field of social work. For instance, Plaintiff sued NHS in relation to unpaid overtime, a suit that was eventually settled. (*Id.* at 21-22). Likewise, Plaintiff brought suit against Alabama DHR and numerous county departments in November 2006, raising claims based on the Rehabilitation Act, the Fair Labor Standards Act, Section 1983, and the Fourteenth Amendment. (*Id.* at 70-71; *Simpson v. State of Alabama Department of Human Resources*, 501 Fed. Appx. 951, 953 n.1 (11th Cir. 2012) (describing Plaintiff's 2006 lawsuit)). And in November 2010, Plaintiff sued many of those same entities, including Alabama DHR, Jefferson County DHR, and Marshall County DHR, for violation of the anti-retaliation provision of the Rehabilitation Act. (Doc. #34, Ex. 5, Part 1 at 95-96; Doc. #37, Ex. 20). Both the 2006 suit (dismissal) and the 2010 suit (summary judgment) were resolved in favor of those Plaintiff sued. *Simpson*, 501 Fed. Appx. at 953.

On June 28, 2012, Plaintiff interviewed for a social work position with two representatives from St. Clair County DHR, Cherri Pilkington and Nicole Peoples. (*Id*. at 61; Doc. #34, Ex. 1). Plaintiff received the interview, as did sixty-three other individuals, because he was among those listed on the Certification of Eligibles Statewide Register that St. Clair County DHR requested from the State of Alabama Personnel Department at the start of its job search. (Doc. #34, Ex. 1 at 5). This was in keeping with St. Clair County DHR's standard practice, which involves the use of Certification of Eligibles Registers in every job search that it conducts. (*Id.* at 6). Indeed, as recently as January 2012, St. Clair County DHR used a Certification of Eligibles Local Register to find a new social worker, ultimately settling on a former St. Clair County DHR intern, Alvarez Kennedy. (*Id.*). At his interview, Plaintiff was professional in both appearance and preparation, but "was not overly impressive" and, at the conclusion of all the interviews, was not one of the "top three choices" for the job. (*Id.* at 5). St. Clair County DHR eventually selected Amanda Johnson to fill the position. (*Id*. at 6). Primarily in response to his unsuccessful interview, Plaintiff filed the present suit on July 16, 2012.

### III.  Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(c) requires the non-moving

party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

If the moving party bears the burden of proof at trial, it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact (*i.e.*, facts that would entitle it to a directed verdict if not controverted at trial). *Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the nonmoving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the nonmoving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the nonmoving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the nonmoving party on the issue in question. This method requires more than a simple statement that the nonmoving party cannot meet its burden at trial, but does not require evidence negating the nonmovant's claim; it simply requires the movant to show that there is an absence of evidence to support the nonmoving party's case. *Fitzpatrick*, 2 F.3d at 1115-16.

If the movant meets its initial burden by using this second method, the nonmoving party may either rely on evidence in the record, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the nonmoving party may come forward with additional evidence that is sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the nonmovant can no longer rest on mere allegations, but must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343, 358 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

**IV.   Discussion**

After careful review of the Rule 56 record and the parties' briefs, and for the reasons stated below, the court concludes that Defendants' motion should be granted.

    **A.   Overview of Defendants' Arguments in Support of Summary Judgment**

Plaintiff's Complaint (Doc. #1) asserts two causes of action: 1) retaliation in violation of the Rehabilitation Act; and 2) discrimination in violation of the Rehabilitation Act.[2]  Although

---

[2] As a result its pervasive lack of clarity and explicit pleading of a single count, Plaintiff's Complaint (Doc. #1) initially appears to assert only one cause of action (*i.e.*, retaliation in violation of the Rehabilitation Act). However, upon closer examination of the Complaint, it is evident that Plaintiff intended to assert claims for both retaliation *and* discrimination under the Rehabilitation Act. (Doc. #1 at ¶ 42—"The plaintiff has not been hired by the defendants because of his disability;" *Id*. at ¶ 44—"Defendants by its actions has intentionally, maliciously and with reckless indifference Retaliated and discriminated against Simpson."). Such a reading of the Complaint is

6

the claims largely arise out of Plaintiff's failed attempt in June 2012 to secure a job with Defendant St. Clair County DHR, Plaintiff is also pursuing the same causes of action against Alabama DHR, Jefferson County DHR, and Marshall County DHR.

In their Motion for Summary Judgment (Doc. #34), Defendants seek judgment as to all of Plaintiff's claims. During the discovery process, Defendants developed a particularly detailed factual record, which they have relied upon in presenting their summary judgment arguments. In doing so, Defendants have pointed to undisputed facts in that record to demonstrate the tenuous, conspiratorial nature of the claims made by Plaintiff against Defendants Alabama DHR, Jefferson County DHR, and Marshall County DHR. (Doc. #34 at 10-15). Defendants have also shown that Plaintiff's claims against St. Clair County DHR, while perhaps slightly more viable in theory, lack the Rule 56 factual support to survive summary judgment. Each of Defendants' arguments are addressed below.

      **B.    Defendants Are Entitled to Summary Judgment on Plaintiff's Retaliation Claim**

Plaintiff's primary claim is for retaliation in violation of the Rehabilitation Act. (Doc. #1 at ¶¶ 1, 41, 44). The Rehabilitation Act generally prohibits any program or activity receiving federal funds from discriminating against otherwise qualified individuals with a disability. *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000); *see also* 29 U.S.C. § 794(a). In regard to retaliation, the Rehabilitation Act incorporates the anti-retaliation provision from the Americans with Disabilities Act ("ADA"). *See* 29 U.S.C. § 794(d). The ADA's anti-retaliation provision provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter." 42 U.S.C. § 12203(a). This provision is similar to Title VII's prohibition on retaliation. *See Stewart v. Happy Herman's*

---

further confirmed by Plaintiff's multiple references to a claim for discrimination in his Response to Defendants' Motion for Summary Judgment (Doc. #37 at 11, 44).

*Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997). As a result, it is most appropriate to evaluate Plaintiff's Rehabilitation Act retaliation claim under the *McDonnell-Douglas* burden-shifting framework that is applied to Title VII retaliation claims. *Id.*; *see also Ellis v. England*, 432 F.3d 1321, 1323-24 (11th Cir. 2005). Under this statutory scheme, the plaintiff bears the initial burden of establishing a *prima facie* case of retaliation, which requires a showing that: (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there was some causal relationship between the two events. *Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997). "Once a plaintiff has established a *prima facie* case, the employer then has an opportunity to articulate a legitimate, non-retaliatory reason for the challenged employment action." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001). If the employer does so, the plaintiff is once again saddled with the burden, which requires him to show by a preponderance of the evidence that the employer's proffered reason is merely pretext for prohibited, retaliatory behavior. *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998).

      **1.**    **Plaintiff Has Not Established a *Prima Facie* Case of Retaliation Against Alabama DHR, Jefferson County DHR, or Marshall County DHR**

Defendants Alabama DHR, Jefferson County DHR, and Marshall County DHR are entitled to summary judgment on Plaintiff's retaliation claim, because Plaintiff is unable to carry his initial burden of establishing a *prima facie* case of retaliation. Indeed, Plaintiff has made a sufficient showing as to the first element (protected activity) of a *prima facie* case, but has failed to demonstrate either the second (adverse employment action) or third (causal connection) *prima facie* elements.

The exact theory behind Plaintiff's retaliation claim against Alabama DHR, Jefferson County DHR, and Marshall County DHR is not entirely clear, but its general contours are as follows: as a result of his November 2010 lawsuit, Plaintiff was neither interviewed nor hired by the aforementioned Defendants.  The November 2010 lawsuit is undoubtedly a protected activity that satisfies the first element of a *prima facie* case. *Pipkins v. City of Temple Terrance, Fla.*, 267 F.3d 1197, 1201 (11th Cir. 2001) ("Statutorily protected expression includes . . . discrimination-based lawsuits").  However, it is at this point that the particulars of Plaintiff's *prima facie* narrative become murky: Plaintiff claims that Defendants subjected him to an "adverse employment action" by not interviewing or hiring him (Doc. #1 at ¶¶ 39, 41), but he has failed to articulate any Rule 56 factual basis for this claim.  Indeed, the interview and hiring process for state-employed social workers is very standardized and transparent,[3] yet Plaintiff has offered nothing but conclusory statements in support of the notion that Defendants deviated from normal procedure.  Plaintiff intimates that Defendants prevented him from being interviewed or hired by (a) actively keeping his name off the state and local registers,[4] and/or (b) not using the registers in the hiring process,[5] but he has also readily conceded that he has no evidence to support his allegations. (Doc. #34, Ex. 5, Part 1 at 70-72, 77-80, 91).

---

[3] Whenever a county department of human resources wants to hire a new social worker, it contacts the Alabama State Personnel Department to obtain a list (commonly referred to as a "register") of eligible candidates (*i.e.*, those persons who have met the State's qualifications for the respective position and who have properly registered their interest with the Alabama State Personnel Department), and then offers interviews to all of the listed candidates.  *See, e.g.*, Doc. #34, Ex. 1 at 6 ("Every individual that I have hired at SCDHR has been from a Certification of Eligibles Register for the position in which I was filling.  I have offered interviews to all interested candidates who are listed on the register for each position.").

[4] *See, e.g.*, Doc. #38 at 33 ("As can be seen the defendants can orchestrate, manipulate, condone and facilitate these registers . . . [If] State personnel would prevent even one African American from appearing on the register what would stop SPD and DHR from preventing someone who sued their dept. three times and has a heavy file on him at the source.  These defendants are guilty just the same JCDHR prevented his name from appearing because of his disability status and their view of him.").

[5] *See, e.g.*, Doc. #1 at ¶ 31 ("The administrative decision maker's [sic] . . . individually condoned in hiring without a register.").

In contrast, Defendants have presented substantial evidence that Plaintiff's failure to be interviewed or hired was the simple result of Plaintiff not being properly registered with the Alabama State Personnel Department. (Doc. #34 at 12, 13, 15). To this end, Defendants have set forth numerous affidavits and records demonstrating that Plaintiff was not listed on the relevant registers during the applicable period. (Doc. #34 at Ex. 2-Ex. 4). Because Plaintiff is unable to present any substantial evidence that Defendants took any steps or engaged in any activity (*i.e.*, *action*) to frustrate or circumvent the standard interview/hiring process, his theory as to Defendants' alleged adverse action is fatally flawed. Indeed, his allegations of adverse action require leaps of conspiratorial fancy in practice, which is at odds with the level of Rule 56 evidentiary support necessary to establish the *prima facie* elements at the summary judgment stage.

Moreover, even if Defendants' failure to interview or hire Plaintiff could be deemed an adverse employment action that they (the Defendants) engaged in, Plaintiff's claim fails for an additional reason: he has failed to show a causal connection between the first and second elements. "To establish a causal connection, a plaintiff must show that the decision-makers were aware of the protected conduct and that the protected activity and the adverse action were not wholly unrelated." *Gupta v. Fla. Bd of Regents*, 212 F.3d 571, 590 (11th Cir. 2000). "[A] plaintiff satisfies this element if he provides sufficient evidence that the *decision-maker* became aware of the protected conduct, and that there was *close temporal proximity* between this awareness and the adverse employment action." *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999) (emphasis added). "It is not enough for the plaintiff to show that someone in the organization knew of the protected expression; instead, the plaintiff must show that *the person taking the adverse action* was aware of the protected expression." *Bass v. Board*

*of County Commissioners, Orange County, Fla.*, 256 F.3d 1095, 1119 (11th Cir. 2001) (emphasis added).

In the present case, Plaintiff has failed to demonstrate a causal connection for *prima facie* case purposes, as he has provided no evidence (and certainly no substantial evidence) that the actual individuals who were the 2012 decision-makers at Alabama DHR, Jefferson County DHR, or Marshall County DHR were even aware of his protected activity. To the contrary, Plaintiff stated repeatedly at deposition that he had no evidence in this regard to support his claims against Alabama DHR, Jefferson County DHR, and Marshall County DHR. (Doc. #34, Ex. 5, Part 1 at 70-72, 77-80, 91).

Finally, there is too large of a temporal gap between Plaintiff's 2010 lawsuit and his 2012 application to create any inference of retaliation. Although a plaintiff can establish a causal connection by showing "a close temporal proximity" between the time an employer becomes aware of the protected activity and the time the adverse action occurs, *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007), such proximity must be "very close." *Clark County School District v. Breeden*, 532 U.S. 268, 273 (2001). Here, more than a year and a half passed between Plaintiff's protected activity (November 2010) and the alleged adverse action (June 2012), a period of time that is too lengthy to suggest causation. *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006) (holding that a three-month gap between protected activity and adverse action was not sufficiently proximate to show causation); *Wascura v. City of South Miami*, 257 F.3d 1238, 1248 (11th Cir. 2001) (concluding that, in light of evidence of legitimate reasons for the employer's action, a three-and-a-half-month temporal proximity was insufficient to create a jury issue on causation); *Sierminski v. Transouth Financial Corporation*, 216 F.3d 945, 951 (11th Cir. 2000) (quoting approvingly the district court's determination that a seventh-

month period was too attenuated, particularly where the record was "replete" with other reasons for the adverse action other than the plaintiff's protected activity). As such, Plaintiff has failed to carry his initial burden of establishing a *prima facie* case of retaliation and Defendants Alabama DHR, Jefferson County DHR, and Marshall County DHR are entitled to summary judgment on Plaintiff's retaliation claim.

> **2. Even Assuming *Arguendo* That He Established a *Prima Facie* Case of Retaliation Against Defendants Alabama DHR, Jefferson County DHR, and Marshall County DHR, Plaintiff is Unable to Rebut Tthose Defendants' Articulated Basis for Not Interviewing Him**

The court has already explained why Plaintiff has not established a *prima facie* case of retaliation against Alabama DHR, Jefferson County DHR, or Marshall County DHR. In addition, the court notes that even if Plaintiff were able to establish a *prima facie* case of retaliation, he has not set forth the Rule 56 evidence necessary to rebut those Defendants' articulated explanations for not interviewing him.

Pursuant to the burden-shifting framework applied to retaliation claims under the Rehabilitation Act, a defendant is required to put forth a non-retaliatory reason for the challenged adverse action after the plaintiff establishes a *prima facie* case. *Pennington*, 261 F.3d at 1266. These Defendants have each satisfied this burden here because they have said that, notwithstanding what Plaintiff thought his status to be at the time, he was not interviewed because he was not on the Certificate of Eligibles Register of eligible candidates (*see supra* at p. 9, n.3) maintained by the Alabama State Personnel Department. (Doc. #34 at 12, 13, 15).

Once a non-retaliatory explanation has been proffered by a defendant, the burden shifts back to the plaintiff to show that the challenged adverse action was driven not by the proffered reason, but rather by a retaliatory motive. *Olmsted*, 141 F.3d at 1460. Plaintiff has failed to meet this burden, as he has offered absolutely no evidence (and certainly no substantial evidence) to

rebut Plaintiff's non-retaliatory reasoning. As a result, these Defendants are entitled to summary judgment for this reason, also.

### 3. Plaintiff Has Not Established a *Prima Facie* Case of Retaliation Against St. Clair County DHR

Defendant St. Clair County DHR is also entitled to summary judgment on Plaintiff's retaliation claim, as a result of Plaintiff's *prima facie* deficiencies.

There is little doubt that Plaintiff has made a sufficient showing as to the first two elements of a *prima facie* case for retaliation, *i.e.*, protected activity and adverse employment action. Indeed, Plaintiff's November 2010 lawsuit constitutes protected activity for purposes of a retaliation claim, *Pipkins*, 267 F.3d at 1201, and it seems clear that St. Clair County DHR's failure to hire Plaintiff after his June 2012 interview amounts to an adverse employment action. *Crawford v. Carroll*, 529 F.3d 961, 974 (11th Cir. 2008) (holding that an adverse employment action is something that "clearly might deter a reasonable employee from pursuing a pending charge of discrimination or making a new one"). However, Plaintiff has not demonstrated a causal connection between his protected activity and St. Clair County DHR's adverse action, dooming his attempt to meet the initial, *prima facie* burden.

As noted above, "[t]o establish a causal connection, a plaintiff must show that the decision-makers were aware of the protected conduct and that the protected activity and the adverse action were not wholly unrelated." *Gupta v. Fla. Bd of Regents*, 212 F.3d 571, 590 (11th Cir. 2000). "[A] plaintiff satisfies this element if he provides sufficient evidence that the *decision-maker* became *aware* of the protected conduct, and that there was *close temporal proximity* between this awareness and the adverse employment action." *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999) (emphasis added). Here, Plaintiff has failed

to show that St. Clair County DHR's decision-maker was aware of his protected activity (*i.e.*, his November 2010 lawsuit).

The relevant decision-maker in this instance was Cherri Pilkington, the Director of St. Clair County DHR and the primary conductor of Plaintiff's June 2012 interview. (Doc. #34, Ex. 1 at 2, 5). Not only has Plaintiff failed to present any evidence that Pilkington was aware of his prior lawsuit, but he also testified to the contrary at deposition.[6] In fact, in an affidavit submitted in support of Defendants' Motion for Summary Judgment, Pilkington testified that she was unaware of Plaintiff's protected activity. (Doc. #34, Ex. 1 at 5-6—"I had no knowledge of… Mr. Simpson's previous lawsuits, or protective [sic] activity, when I conducted the interview with him on June 28, 2012."). As such, Plaintiff has failed to impute to Defendant the sort of awareness that is necessary to demonstrate a causal connection.

Likewise, Plaintiff cannot show a sufficiently close temporal proximity between his protected activity and St. Clair County DHR's adverse action, further frustrating his attempt to establish a causal connection. Plaintiff's unsuccessful, June 2012 interview was more than a year and a half removed from his November 2010 lawsuit, resulting in a gap of time that far exceeds the proximity needed for causation. *See Drago*, 453 F.3d at 1308 (holding that a three-month gap between protected activity and adverse action was not sufficiently proximate to show causation); *Wascura*, 257 F.3d at 1248 (concluding that, in light of evidence of legitimate reasons for the

---

[6] Plaintiff's Deposition:

> Q: [D]o you have any evidence that Ms. Pilkington was aware—
> A: Yeah.
> Q: —of your previous lawsuit?
> A: I don't think Ms. Pilkington was. No, I don't.
> . . .
> A: Now, I don't—I'm not accusing Cherri Pilkington of knowing that I had sued St. Clair County.

Doc. #34, Ex. 5, Part 1 at 86-87.

employer's action, a three-and-a-half-month temporal proximity was insufficient to create a jury issue on causation); *Sierminski*, 216 F.3d at 951 (quoting approvingly the district court's determination that a seventh-month period was too attenuated, particularly where the record was "replete" with other reasons for the adverse action other than the plaintiff's protected activity). Because Plaintiff is unable to show that Ms. Pilkington was aware of his protected activity or that there was a close temporal proximity between his protected activity and Defendant's adverse action, he cannot demonstrate a causal connection and fails to carry his initial burden of establishing a *prima facie* case of retaliation.

        **4.**    **Even Assuming *Arguendo* that He Established a *Prima Facie* Case, Plaintiff is Unable to Rebut St. Clair County DHR's Articulated Basis for the Adverse Action**

The court has already explained why Plaintiff has not established a *prima facie* case of retaliation against St. Clair County DHR. In addition, the court notes that even if Plaintiff were able to establish a *prima facie* case of retaliation, he has not set forth the evidence necessary to rebut Defendant St. Clair County DHR's articulated explanation for not hiring him.

Pursuant to the burden-shifting framework applied to retaliation claims under the Rehabilitation Act, a defendant is required to put forth a non-retaliatory reason for the challenged adverse action after the plaintiff establishes a *prima facie* case. *Pennington*, 261 F.3d at 1266. Defendant St. Clair County DHR has satisfied that burden in the present case, asserting that Plaintiff was not hired because there were other, more qualified candidates. (Doc. #34, Ex. 1 at 5, 7—Pilkington Affidavit—"Mr. Simpson was not overly impressive in his interview. Mr. Simpson was not one of my top three choices after completing all of the interviews for the position . . . Ms. Johnson was selected to fill the position for the open Social Worker position because I believed that she was more qualified for the position.").

Once a non-retaliatory explanation has been proffered by a defendant, the burden shifts back to the plaintiff to show that the challenged adverse action was driven not by the proffered reason, but rather by a retaliatory motive. *Olmsted*, 141 F.3d at 1460.  Plaintiff has failed to meet this burden, as he has offered absolutely no evidence to rebut Plaintiff's non-retaliatory reasoning.  In fact, Plaintiff's deposition testimony ("I'm not accusing Cherri Pilkington of knowing that I had sued St. Clair County") precludes the possibility that Defendant's failure to hire him was retaliatory in nature. (Doc. #34, Ex. 5, Part 1 at 87).  As a result, Defendant St. Clair County DHR is due to be granted summary judgment on Plaintiff's retaliation claim.

### C. Defendants Are Entitled to Summary Judgment on Plaintiff's Discrimination Claim

In addition to his retaliation claim, Plaintiff brings suit against Defendants for disability discrimination in violation of the Rehabilitation Act. (Doc. #1 at ¶¶ 42, 44; Doc. #37 at 11, 44). Due to serious deficiencies in Plaintiff's claim, summary judgment is due to be granted to Defendants.

"The Rehabilitation Act prohibits recipients of federal financial assistance from discriminating against individuals with disabilities." *Garrett v. University of Alabama at Birmingham Board of Trustees*, 507 F.3d 1306, 1310 (11th Cir. 2007).  Because the Rehabilitation Act shares a liability standard with the ADA, claims under the Rehabilitation Act are evaluated in the same manner as those under the ADA, including the use of the *McDonnell-Douglas* burden-shifting framework for claims that rely on circumstantial evidence. *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005); *Collado v. United States Postal Service Co.*, 419 F.3d 1143, 1149-50 (11th Cir. 2005).  "To establish a prima facie case of discrimination under the Act, an individual must show that (1) he has a disability; (2) he is otherwise qualified for the

position; and (3) he was subjected to unlawful discrimination as the result of his disability." *Sutton v. Lader*, 185 F.3d 1203, 1207 (11th Cir. 1999).

Assuming for purposes of summary judgment evaluation that Plaintiff satisfies the first two elements of a *prima facie* case of discrimination,[7] Plaintiff's discrimination claim still fails because of a complete absence from the Rule 56 record of any indication that Defendants discriminated against Plaintiff on the basis of his alleged disability. As established above, Plaintiff had little to no interaction with Defendants Alabama DHR, Jefferson County DHR, and Marshall County DHR (*e.g.*, he did not apply for a job or participate in an interview with these entities), meaning that these Defendants did not have the opportunity to discriminate against Plaintiff. Likewise, Plaintiff has presented no evidence that his interview experience with Defendant St. Clair County DHR was affected by discrimination. In fact, the only evidence in the record that speaks to Plaintiff's claim of discrimination is the affidavit of Ms. Pilkington, which reveals that she was unaware of Plaintiff's alleged disability. (Doc. #34, Ex. 1 at 6—"I had no knowledge of Simpson's alleged disability . . ."). Because Plaintiff has presented absolutely no Rule 56 evidence of discrimination, he has failed to carry his initial burden of establishing a *prima facie* case and Defendants are entitled to summary judgment.

## V.   Conclusion

For the reasons stated above, Defendants' Motion for Summary Judgment (Doc. #34) is due to be granted. A separate order consistent with this memorandum opinion will be entered.

---

[7] Because Defendants declined to challenge Plaintiff's disability status during the briefing process, the court considers Plaintiff disabled for purposes of summary judgment. Properly determining whether a plaintiff is disabled within the meaning of the Rehabilitation Act requires a detailed, time-intensive evaluation, and, since Plaintiff's *prima face* case of discrimination fails on other grounds, the court finds it unnecessary to make such an evaluation at this time.

**DONE** and **ORDERED** this March 14, 2014.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE